IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCOTT B. SULLIVAN, | |
| Plaintiff, | |
| v. | Case No. 24-CV-2214-EFM-TJJ |
| STEVE SULLIVAN, HERBERT McCOWEN, M.D., DIANA RUTHERFORD, SUSAN WILLIAMS, LISA SULLIVAN, MICHELLE SAFFORD, JANET GEREAU, and JONATHAN ALAN KECK II, | |
| Defendants. | |

## REPORT AND RECOMMENDATION
## FOR DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT

### NOTICE

Within fourteen (14) days after being served with a copy of this Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), Plaintiff may file a written objection to this Report and Recommendation. A party must file any objections within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

### REPORT

#### I.    Procedural Background

Plaintiff Scott B. Sullivan commenced this action *pro se* on May 20, 2024, by filing his Complaint naming eight defendants, including his deceased mother, two siblings, sister-in-law,

former spouse and her family members, and a physician.[1] On May 31, 2024, the Court granted Plaintiff's Motion to Proceed Without Prepayment of Fee, under the *in forma pauperis* statute, 28 U.S.C. § 1915(a)(1), but withheld service of process pending review under 28 U.S.C. § 1915(e)(2)(B).[2] On August 13, 2024, the undersigned Magistrate Judge issued a Report and Recommendation (ECF No. 5) ("First R&R") recommending that the District Judge: (1) dismiss Plaintiff's federal claims under 28 U.S.C. § 1915(e)(2)(B)(ii) because they failed to state a claim upon which relief may be granted;[3] and (2) decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice. The First R&R noted Plaintiff had set forth a rambling, conclusory narrative of his prior and continuing grievances against his family members, healthcare providers, and many others dating back to 2015. The Court found Plaintiff's lengthy supplement to his complaint was largely a repeat of claims and allegations that had been dismissed by this Court and affirmed by the Tenth Circuit Court of Appeals.[4] To the extent Plaintiff attempted to assert federal claims not previously alleged in his prior dismissed cases, the Court found Plaintiff failed to state a claim for relief that was plausible on its face. And, finally, to the extent Plaintiff attempted to assert state law claims related to his mother's estate and/or probate

---

[1] *See* Additional Pages to Compl., ECF No. 1-1, at p. 1.

[2] *See* Order (ECF No. 4).

[3] Plaintiff alleged in his original complaint (ECF No. 1) that this Court has jurisdiction under 28 U.S.C. § 1331 (federal question). As Plaintiff and at least one of the defendants are citizens of the state of Kansas, the Court would not have diversity jurisdiction under 28 U.S.C. § 1332.

[4] *See Sullivan v. Univ. of Kan. Hosp. Auth.,* 844 F. App'x 43 (10th Cir. 2021) (affirming Cases 19-cv-02078-JAR-TJJ; 19-cv-02034-JAR-TJJ; and 18-cv-02606-JAR-TJJ); *Sullivan v. Hartford Fin. Servs. Grp.*, Inc., No. 22-3118, 2023 WL 4635888 (10th Cir. July 20, 2023) (affirming Cases 22-cv-02095-KHV-ADM and 22-cv-02017-KHV-RES); *Sullivan v. Univ. of Kan. Hosp. Auth.*, No. 22-3117, 2023 WL 4995055 (10th Cir. Aug. 4, 2023) (affirming Cases 22-CV-02045-KHV-TJJ and 22-CV-02490-SRB); *Sullivan v. Graham*, No. 23-3153, 2024 WL 2239240 (10th Cir. May 17, 2024) (affirming Cases 22-CV-02319-SRB and 22-CV-02491-SRB).

matters that were not previously alleged in his prior dismissed cases, it was recommended the Court decline to exercise supplemental jurisdiction over them.

On August 27, 2024, Plaintiff timely filed a 34-page objection to the First R&R (ECF No. 6). On September 3, 2024, Plaintiff also filed a 99-page document entitled "Amended Pleading" (ECF No. 7) (hereinafter "Amended Complaint"). The Amended Complaint sets forth seven or more theories of recovery for each of the eight originally named defendants and adds eleven or more theories of recovery against two new defendants. On November 5, 2024, the District Judge referred the matter to the undersigned for a determination of whether Plaintiff's Amended Complaint resolves the deficiencies originally noted in the First R&R and to file an amended R&R if the deficiencies are not resolved.[5]

After careful review of Plaintiff's objection and Amended Complaint, the undersigned Magistrate Judge again concludes that none of Plaintiff's purported federal claims are sufficient to state a claim upon which relief may be granted, the Court should decline to exercise jurisdiction over Plaintiff's purported state law claims, and the case should be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Request for Appointment of Counsel

In his objection to the First R&R and his Amended Complaint, Plaintiff requests the appointment of counsel to provide legal assistance with filing and litigating his claims due to his disabilities. While a defendant in a *criminal* case has a constitutional right to be represented by an attorney, it is well settled that a party in a *civil* case has no absolute right to appointment of counsel.[6] Courts considering requests for the appointment of counsel in civil actions generally look

---

[5] *See* Order (ECF No. 8).

[6] *See Nelson v. Boeing Co.*, 446 F.3d 1118, 1120 (10th Cir. 2006) (noting that "the only context in which courts have recognized a constitutional right to effective assistance of counsel in civil litigation is in

to the *in forma pauperis* statute, 28 U.S.C. § 1915.[7] Under 28 U.S.C. § 1915(e)(1), the court "may <u>request</u> an attorney to represent any person unable to afford counsel."[8] In determining whether to appoint counsel under § 1915(e)(1), the district court may consider a variety of factors, including: (1) the merits of the litigant's claims, (2) the nature of the factual issues raised in the claims, (3) the litigant's ability to present his claims, and (4) the complexity of the legal issues raised by the claims.[9] Further, the party requesting the appointment of counsel must make diligent efforts to secure an attorney on his own.[10] The Court typically requires the plaintiff to "confer with (not merely contact) at least five attorneys" to seek legal representation before filing a motion requesting counsel be appointed.[11]

The appointment of counsel for a plaintiff in a civil case is rare because Congress has not provided any mechanism or funding to compensate counsel appointed in civil cases.[12] Therefore,

---

immigration cases"); *Sandle v. Principi*, 201 F. App'x 579, 582 (10th Cir. 2006) ("There is no constitutional right to counsel in either a Title VII case or other civil case.").

[7] *Lane v. Brewer*, No. 07-3225-JAR, 2008 WL 3271921, at *2 (D. Kan. Aug. 7, 2008); *Winston v. Simmons*, No. 01-3335-KHV, 2003 WL 21418359, at *8 n.7 (D. Kan. June 18, 2003). The Court can also appoint counsel under the ADA "in such circumstances as the court may deem just." 42 U.S.C. § 12117(a) (incorporating the powers, remedies and procedures of 42 U.S.C. § 2000e–5(f)(1)). Similar factors are considered when evaluating a request for appointment of counsel under 42 U.S.C. § 2000e–5(f)(1). Those factors are: (1) "plaintiff's ability to afford counsel; (2) plaintiff's diligence in searching for counsel; and (3) the merits of plaintiff's case" and (4) "plaintiff's capacity to prepare and present the case without the aid of counsel." *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1420–21 (10th Cir. 1992).

[8] Underlining added.

[9] *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

[10] *Cline v. Seal*, No. 22-CV-4009-TC-TJJ, 2022 WL 873419, at *2 (D. Kan. Mar. 24, 2022).

[11] *Sullivan v. WorkMarket*, No. 22-CV-2017-KHV-RES, 2022 WL 22893390, at *2 (D. Kan. Aug. 8, 2022).

[12] *See Castner*, 979 F.2d at 1420 ("Congress has not provided any mechanism for compensating [] appointed counsel. Thoughtful and prudent use of the appointment power is necessary so that willing counsel may be located without the need to make coercive appointments. The indiscriminate appointment of volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys

the Court would have to find an attorney willing to be appointed and provide his or her legal services pro bono by volunteering their time without being paid. The Court therefore must make thoughtful and prudent use of its appointment power.

Plaintiff states in his objection he has recently spoken with a lawyer seeking representation of his claims.[13] While Plaintiff has shown he attempted to contact at least one lawyer seeking legal representation before requesting the Court appoint him counsel in this case, his reported efforts do not rise to the level showing *diligent* efforts and his request is denied on this basis alone.

The Court has further considered Plaintiff's request for the appointment of counsel under the factors listed above. None warrant the appointment of counsel in this case. Plaintiff has demonstrated—through his multiple federal cases filed in this Court and appealed to the Tenth Circuit Court of Appeals, as well as his current filings in this case—that he clearly has the ability to present his claims and arguments despite his disabilities. His abilities to write, research, and make legal arguments appear significantly higher than the typical *pro se* litigant in federal court. Plaintiff argues the standards for appointment are a Catch-22 for a *pro se* litigant, because "winning the appointment of counsel debate would prove to the court's satisfaction that [the litigant does] not need counsel."[14] This argument, however, does not take into account the fact that the Court reviews pleadings prepared by a *pro se* litigant under a more lenient standard. Even under this more lenient standard, Plaintiff's allegations regarding the actions of Defendants simply do not support the federal claims he attempts to assert. Even if the Court were able to find an attorney willing to represent Plaintiff pro bono, the appointment of an attorney for Plaintiff would not

---

from donating their time.").

[13] Obj. to R.& R. (ECF No. 6) at 19.

[14] *Id.* at 10.

change the facts or the Court's recommendation, set forth below, for dismissal of all Plaintiff's purported federal claims. Plaintiff's request for the Court to appoint counsel to represent him in this case is denied.

## III.    Procedural Issues with Serving Defendants

Before addressing whether Plaintiff's Amended Complaint resolves the deficiencies originally noted in the First R&R, the Court notes that even if this complaint survived screening under the *in forma pauperis* statute there are procedural issues preventing the Court from ordering the issuance of summons and service of process upon the named defendants under 28 U.S.C. § 1915(d). First, Plaintiff names a defendant—his deceased mother—who cannot be served.[15] Second, Plaintiff fails to provide complete addresses to serve all named Defendants. In his attachment to the original Complaint (ECF No. 1-1), Plaintiff provides addresses for service on some of the living defendants but not all.[16] His Amended Complaint provides no addresses for service at all for the originally named defendants, or the two newly added defendants, Dr. Ruiz or Family Health Medical Group. However, because these procedural and service issues may be curable, the Court reviews Plaintiff's Amended Complaint to see if the federal claims asserted against these defendants survive screening under 28 U.S.C. § 1915(e)(2)(B).

## IV.    Applicable Legal Standards

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss an *in forma pauperis* action "at any time" if it determines the action "fails to state a claim on which relief may be granted."[17]

---

[15] Plaintiff would need to substitute the proper party under Fed. R. Civ. P. 25(a)(1), which allows for the substitution of the proper party if a party dies and the claims are not extinguished.

[16] *See* ECF No. 1-1 (stating "current address known" for Defendants Safford and Keck).

[17] 28 U.S.C. § 1915(e)(2)(B)(ii).

This provision is to prevent "abusive or captious litigation" and is based upon a recognition that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."[18]

In determining whether a complaint states a claim, the Court applies the same standard used in resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[19] To survive a Rule 12(b) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[22]

Because Plaintiff proceeds *pro se*, his pleadings are liberally construed.[23] Liberal construction, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."[24] "Dismissal of a pro se complaint for failure to

---

[18] *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

[19] *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[21] *Id.*

[22] *Id.*

[23] *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018).

[24] *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[25]

Plaintiff bears the burden of establishing the Court has jurisdiction over his case.[26] In his original complaint (ECF No. 1), Plaintiff alleges that he and the first and second named defendants are all citizens of the state of Kansas. The Court therefore does not have jurisdiction over this action based upon diversity of citizenship under 28 U.S.C. § 1332. Plaintiff must establish an alternate basis for jurisdiction, such as federal question jurisdiction under 28 U.S.C. § 1331.

## V.   Review of Plaintiff's Amended Complaint

### A.   Newly Added Defendants Ruiz and Family Health

Plaintiff sets out eleven and twelve theories of recovery, respectively, against defendants Dr. Ruiz and Family Health Medical Group ("Family Health"), who were not named in Plaintiff's original complaint but added to pages 93–95 of his Amended Complaint.[27] However, Plaintiff's Amended Complaint fails to allege any facts that would support his attempted claims against these defendants. Highly simplified, for a *pro se* plaintiff to state a claim in federal court, his complaint must explain what each defendant did to him; when the defendant did it; how the defendants' action harmed him; and what specific legal right he believes the defendants violated.[28] Plaintiff's

---

[25] *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

[26] *McBride v. Doe*, 71 F. App'x 788, 789–90 (10th Cir. 2003) (holding a *pro se* plaintiff attempting to assert diversity jurisdiction bears the burden of establishing federal jurisdiction if plaintiff wishes to invoke such federal jurisdiction, despite the plaintiff's pro se status).

[27] Neither Dr. Ruiz, nor Family Health are listed in the caption of Plaintiff's Amended Complaint.

[28] *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).

sole mention of Dr. Ruiz is a vague reference to having an appointment with him in 2015.[29] Plaintiff's only mention of Family Health is that his various family members conspired with it to cover up his Tarlov Cyst Disease.[30] The Amended Complaint lacks any factual allegations regarding what these new defendants did, how their actions harmed Plaintiff, and what specific legal right they violated. Plaintiff has therefore failed to state a claim for relief that can be granted as to these new defendants and any claims against them in the Amended Complaint should be dismissed under Section 1915(e)(2)(ii).

The Court also finds that allowing Plaintiff another opportunity to amend his complaint would be futile and create undue prejudice for these defendants. Plaintiff's prior lawsuit against these same defendants—based upon the same alleged conduct in 2015 and 2016[31]—has been dismissed and affirmed by the Tenth Circuit Court of Appeals.[32]

### B.    Family Defendants

In his Amended Complaint, Plaintiff asserts theories of recovery arising under federal law against his brother, sister-in-law, sister, deceased mother, former spouse and her son and mother (hereinafter the "Family Defendants"). These theories include: "Conspiracy to interfere with civil

---

[29] Am. Compl. (ECF No. 7) at ¶ 396.

[30] *Id.* at p. 85.

[31] Compare allegations regarding Dr. Ruiz and Family Health in Amended Complaint at ¶¶ 142, 373, 396 with allegations in *Sullivan v. HCA Healthcare, Inc.*, No. 19-2034-JAR-TJJ, 2019 WL 4034473, at *1 (D. Kan. Aug. 27, 2019), *aff'd sub nom. Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43 (10th Cir. 2021) ("Plaintiff sought medical care at Family Health from Dr. Ruiz on February 14, 2015.").

[32] *See Sullivan v. HCA Healthcare, Inc.*, No. 19-2034-JAR-TJJ, 2019 WL 4034473, at *4–*8 (D. Kan. Aug. 27, 2019), *aff'd sub nom. Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43 (10th Cir. 2021)(dismissing Plaintiff's claims against Dr. Ruiz and Family Health for disability discrimination and medical malpractice under the ADA, discriminatory business practices, RICO, obstruction of justice, and Section 1981 discriminatory animus)).

rights under the civil rights acts, 42 U.S.C. § 1981–1988;" "Conduct of a Racketeering Enterprise;" conspiracy with various "racketeering enterprises;" and "retaliation, intimidation, interference and harassment under Title V of the ADA."[33] The Court addresses each discernable attempted federal claim against the Family Defendants.

### 1.    Conspiracy to interfere with civil rights – 42 U.S.C. § 1985(3)

Plaintiff alleges the Family Defendants are liable to him for "[c]onspiracy to interfere with civil rights under the Reconstruction era civil rights acts, 42 U.S.C. 1981–1988."[34] Plaintiff asserts his claims against his family members so the Court construes his Amended Complaint as attempting to state a claim under § 1985(3).[35]

Section 1985 sets forth five categories of prohibited conspiracy.[36] "Three of the five broad categories . . . relate to institutions and processes of the federal government," specifically federal officers, federal judicial proceedings, and federal elections.[37] The fourth category "applies to conspiracies to obstruct the course of justice in state courts."[38] And the final category, contained

---

[33] Am. Compl. at pp. 68–89.

[34] *Id*. at pp. 68, 73, 77, 79, 85–86, and 89.

[35] For all the other civil rights statutes Plaintiff cites, e.g., 42 U.S.C. §§ 1981–1988, they are either inapplicable here or he fails to state a claim under them.  *See Sullivan v. Hartford Fin. Servs. Grp., Inc*., No. 22-2095-KHV-ADM, 2022 WL 2309095, at *3–4 (D. Kan. Apr. 20, 2022), report and recommendation adopted, 2022 WL 2309034 (D. Kan. May 26, 2022), *aff'd*, No. 22-3118, 2023 WL 4635888 (10th Cir. July 20, 2023), and *aff'd*, No. 22-3118, 2023 WL 4635888 (10th Cir. July 20, 2023) (recommending dismissal of Plaintiff's claims brought pursuant to "Civil Rights Sections 1981–1988"). For example, Plaintiff's Amended Complaint does not contain allegations relating to racial discrimination (for Section 1981 and 1982 claims) or relating to the federal government or state courts (for a Section 1983 claim). *Id.* at *4.

[36] *See Kush v. Rutledge*, 460 U.S. 719, 724 (1983).

[37] *Id.*

[38] *Id.* at 725.

in § 1985(3), creates a cause of action against two or more persons who conspire to deprive a plaintiff of equal protection or equal privileges or immunities.[39]

To state a claim for civil conspiracy under § 1985(3), a plaintiff must allege "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the coconspirators' action."[40]  The "class-based animus" required for § 1985(3) has been narrowly construed, for example, as not including conspiracies motivated by "economic or commercial animus."[41] The Tenth Circuit has further narrowed the scope of the class of persons entitled to protection under § 1985(3). In *Wilhelm v. Continental Title Co.*, the Tenth Circuit concluded "a class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3)."[42] In 2023, the Tenth Circuit reaffirmed its *Wilhelm* precedent on this issue.[43] Notably it was reaffirmed in *Sullivan v. Hartford Financial Services Group, Inc.*, where the Tenth Circuit rejected Plaintiff's argument that "disability-based" animus should be a basis for his § 1985(3) claim.[44]

Plaintiff devotes several paragraphs of his Amended Complaint to describing his disabilities, including his Tarlov Cyst Disease and schizophrenia diagnosis. The Court thus

---

[39] *See id.*; *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

[40] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

[41] *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 838 (1983).

[42] *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1177 (10th Cir. 1983).

[43] *Sullivan v. Hartford Fin. Servs. Grp., Inc.*, No. 22-3118, 2023 WL 4635888, at *3 (10th Cir. July 20, 2023).

[44] *Id.* The Tenth Court found that even if it concluded that disabled persons were included in § 1985(3), Plaintiff's complaint was "devoid of any plausible allegations to support such a claim."  *Id.*

construes his claim to be that the alleged conspiracy of his family members was motivated by disability-based discriminatory animus. However, as Plaintiff is well aware, under current Tenth Circuit precedent, disabled persons currently do not qualify as a class for the class-based animus element under § 1985(3).

Plaintiff's Amended Complaint therefore fails to state a claim under Section 1985(3) because he does not allege a "class-based animus," which is an essential element of a Section 1985(3) claim. To the extent Plaintiff's allegation of "class-based animus" is based upon his disabilities, they are not legally sufficient and therefore cannot sustain his § 1985(3) claims against the Family Defendants. Furthermore, the Amended Complaint is devoid of any plausible factual allegations that would support a claim under Section 1985(3) against the Family Defendants.

### 2.    RICO

Plaintiff also seeks to assert a claim against his brother, sister-in-law, sister, and deceased mother based upon their "conduct of a Racketeering Enterprise regarding the conduct of the Sullivan family enterprise to defraud [Plaintiff] and retaliate and obstruct [him] from filing Federal criminal reports and claims."[45] The Court construes this as a claim for violation of the Racketeer Influenced Corrupt Organizations Act ("RICO").[46] More specifically, Plaintiff attempts to assert a violation of 18 U.S.C. § 1962(c). That subsection makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

---

[45] Am. Compl. at pp. 68, 73, 77, and 79. Plaintiff does not assert his RICO claim against Defendants Safford, Keck, or Gereau.

[46] 18 U.S.C. § 1962.

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[47]

To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity."[48] "Racketeering activity" consists of the criminal offenses listed in 18 U.S.C. § 1961(1), and a "pattern" requires at least two racketeering acts committed within ten years of each other.[49]

Plaintiff alleges the purpose of the alleged "Sullivan family enterprise" was "to defraud," "retaliate," and "obstruct" him from "filing Federal criminal reports and claims." However, none of Plaintiff's allegations fall within the list of criminal offenses listed in 18 U.S.C. § 1961(1) as "racketeering activity."[50] Plaintiff does generally allege "wire and mail fraud" in his claim against his deceased mother, which are crimes listed in § 1961(1), but he has not adequately pleaded any instances of mail or wire fraud, let alone two or more instances of such by any of the Family Defendants.[51]

Plaintiff makes the following additional allegations against his brother and sister: They convinced their mother that Plaintiff "was trying to kill her" so she would disinherit him; "attempted to extort the sale or surrender of Plaintiff's home in 2012," "constructed and put into [effect] plans to exploit Plaintiff's disabilities," "accuse[d] Plaintiff of delusional mental illness

---

[47] 18 U.S.C. § 1962(c).

[48] *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022).

[49] *Id.*; 18 U.S.C. § 1961(5).

[50] The crimes listed in § 1961(1) relating to fraud or obstruction of justice are not applicable here.

[51] Plaintiff attaches Exhibit 5 to his Amended Complaint, which he contends is "prima facie documentation of the interstate wire and mail fraud of which [he] claim[s] to be a victim." ECF No. 7, ¶ 203. Exhibit 5 is merely a website screenshot of "Insurance FAQ" for OnForce.

explicitly to seize control of his home for enterprise purposes," restructured their mother's estate to disinherit Plaintiff by changing or eliminating their mother's will, and "arranged to have substantially all of [their] mother's assets transferred through other legal means."[52]

Plaintiff does not identify the particular criminal offenses allegedly committed by any of the Family Defendants that would constitute "racketeering activity," and the Court finds their alleged actions do not provide any factual basis for any actionable pattern of criminal racketeering activity under the statute. These allegations are therefore insufficient to plausibly allege Defendants engaged in actionable criminal racketeering activity. Plaintiff's Amended Complaint therefore fails to state a RICO claim against the Family Defendants.

### 3.   RICO Conspiracy

Plaintiff also seeks to assert conspiracy-based RICO violations against the Family Defendants. He describes these conspiracies as follows:

- Conspiracy with the racketeering enterprise of Family Health Medical Group and Dr. Herbert McCowen [to cover up Plaintiff's Tarlov Cyst Disease].[53]

- Conspiracy with the racketeering enterprise of OnForce, The Hartford and Berkshire Hathaway along with [other Family Defendants], [law firms] McAnany, Van Cleave and Phillips, [attorneys] Greg Goheen, Kelli Broers and the judges of the Kansas Judicial Branch [to cover up the OnForce racketeering].[54]

With respect to Defendants Safford, Keck, and Gereau, Plaintiff also claims they conspired with "the Sullivan family enterprise to defraud [Plaintiff] and retaliate and obstruct [Plaintiff] from

---

[52] Am. Compl. at ¶¶ 295–96, 298, 313, 316, 321, 344, 349.

[53] Am. Compl. at pp. 73, 78–79, 85, 87, and 89. For his claims against Defendant Rutherford, Plaintiff adds "to cover up Tarlov Cyst Disease through pattern of witness intimidation, retaliation, and wire and mail fraud." *Id.* at 68.

[54] Am. Compl. at pp. 68, 73–74, 78–79, 86–87, and 89. For his claim against Defendant Rutherford, Plaintiff adds "to cover up the OnForce racketeering." *Id.* at 68.

filing Federal criminal reports and claims."[55] According to Plaintiff, Defendant Safford delivered and conspired in an alleged murder threat against Plaintiff by the Kansas Supreme Court on December 15, 2015, as a ploy to scare Plaintiff into abandoning his home, drop all of his legal claims and settle two pending cases.[56]

18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate" subsection 1962(c). To establish a violation of § 1962(d), i.e., a RICO conspiracy, a civil plaintiff must demonstrate that the alleged coconspirators "knew about and agreed to facilitate" a pattern of racketeering activity.[57] Conspiracy to commit a RICO violation occurs when a conspirator adopts the goal of furthering the RICO enterprise, even if the conspirator does not commit a predicate act.[58] Whereas § 1962(c) creates liability to conduct or participate in the conduct of a RICO enterprise's affairs through a pattern of racketeering activity, § 1962(d) simply creates the liability from conspiring to do so.[59] A claim of conspiracy requires the plaintiff demonstrate direct or circumstantial evidence of a meeting of the minds or agreement of the defendants.[60] "A RICO

---

[55] *Id*. at 85–86, and 89.

[56] *Id*. at 32, 57–58, 80–81. In one of his earlier cases, Plaintiff alleged this same December 15, 2015 murder threat allegedly communicated by Defendant Safford. *See Sullivan v. WorkMarket*, No. 22-2017-KHV-RES, 2022 WL 4932306, at *3, *6, *11 (D. Kan. Aug. 8, 2022), report and recommendation adopted, 2022 WL 4938906 (D. Kan. Aug. 30, 2022), *aff'd* No. 22-3118, 2023 WL 4635888 (10th Cir. July 20, 2023).

[57] *Salinas v. United States*, 522 U.S. 52, 65 (1997).

[58] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014).

[59] *See Salinas v. United States*, 522 U.S. 52, 62–63 (1997).

[60] *Goode v. Rysavy*, No. 1:20-CV-00742-DDD-KLM, 2024 WL 3835999, at *5 (D. Colo. Mar. 31, 2024).

conspiracy claim under § 1962(d) must be dismissed when the plaintiff does not state a claim for violations under Sections 1962(a) through (c)."[61]

The conspiracies described by Plaintiff above do not show any of the Family Defendants knew about and agreed to facilitate a pattern of racketeering activity. Plaintiff has provided no allegations to support a finding that the Family Defendants had a meeting of the minds or agreement to conspire to commit a RICO violation. In any event, as Plaintiff failed to state a claim for a RICO violation under § 1962(c), his RICO conspiracy claim under § 1962(d) must also be dismissed. Accepting Plaintiff's factual allegations in the Amended Complaint as true and construing all inferences in favor of Plaintiff, the Amended Complaint fails to state a valid claim against the Family Defendants for a conspiracy-based RICO violation under § 1962(d).

### 4.    Retaliation and Interference Under the ADA

Plaintiff also alleges in his Amended Complaint the Family Defendants are liable to him for "retaliation, intimidation, interference and harassment under Title V of the ADA."[62] Title V of the Americans with Disabilities Act ("ADA") prohibits retaliation for the assertion of ADA rights.[63] The anti-retaliation provision protects "any individual" who has "opposed any act or practice" made unlawful by the ADA or "made a charge, testified, assisted, or participated" in an

---

[61] *Burdett v. Harrah's Kan. Casino Corp.*, 260 F. Supp. 2d 1109, 1122 (D. Kan. 2003) (citations omitted). *See also Aldridge v. Aleritas Cap. Corp.*, No. 09-2178-CM-KGS, 2010 WL 11566001, at *5 (D. Kan. Feb. 10, 2010) ("If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law.").

[62] Am. Compl. at pp. 69, 74, 78–79, 86–87, and 89.

[63] *See* 42 U.S.C. §§ 12203(a) and (b). Congress has divided the ADA into five sections: private sector employment under Title I; public programs and activities under Title II; public accommodations under Title III; telecommunications under Title IV; and miscellaneous provisions under Title V (including anti-retaliation and anti-interference provisions). 42 U.S.C. § 12101 et seq.

ADA investigation, proceeding, or hearing.[64] The ADA's anti-interference provision makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of" a right granted or protected by the ADA.[65] "The scope of the [ADA's] anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."[66]

Plaintiff does not allege any retaliatory action by the Family Defendants resulting from his opposition to any act or practice unlawful under the ADA or his participation in any ADA charge, investigation, proceeding, or hearing. Nor does he allege the Family Defendants interfered with his attempt to exercise an unspecified right protected under the ADA. The only arguably relevant allegations by Plaintiff are those against his brother, specifically that he "constructed and put into effect the plans to exploit [Plaintiff's] disabilities and deprive [him] of medical care and benefits," and refused to provide Plaintiff with his fund-raising services and "on grounds of [Plaintiff's] disability."[67] However, neither conclusory allegation states a plausible ADA retaliation or interference claim against this Defendant.[68]

Accepting all allegations of the complaint as true and viewing them in the light most favorable to him, the Court finds Plaintiff alleges no facts that would support a claim under either the anti-retaliation or anti-interference provisions of the ADA. Plaintiff can prove no set of facts

---

[64] 42 U.S.C. § 12203(a).

[65] 42 U.S.C. § 12203(b).

[66] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

[67] Am. Compl. at p. 69.

[68] Nor do these allegations state a claim under any of the ADA's other provisions.

in support of these theories that would entitle him to relief against the Family Defendants under Title V of the ADA.

### C.    Defendant McCowen

Plaintiff's Amended Complaint lists twelve theories of recovery against Defendant McCowen for violation of the ADA and the Rehabilitation Act, RICO, conspiracy to interfere with civil rights, "conspiracy with a racketeering enterprise," and other various state law claims.[69] However, Plaintiff's Amended Complaint fails to allege any facts that would support his theories of recovery against Defendant McCowen. Plaintiff alleges in his Amended Complaint that Defendant McCowen "fraudulently created medical records with a schizophrenic diagnosis for Plaintiff based on statements of Plaintiff's mother and sister," "fraudulently declare[d] Plaintiff a schizophrenic on January 19, 2016," and "covered up Plaintiff's Tarlov Cyst Disease."[70] These factual allegations are not sufficient to state a claim upon relief for any of the theories of recovery asserted in the Amended Complaint and should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

With respect to the Section 1985(3), RICO, RICO conspiracy, and ADA retaliation and interference claims Plaintiff has asserted against Defendant McCowen, the Court finds those federal claims fail to state a claim for the same reasons set forth discussed above for the Family Defendants and because the sparse allegations against McCowen are insufficient to state a claim under any of these theories of recovery. Nor do any of the facts alleged by Plaintiff in his Amended Complaint state to claim against Defendant McCowen under the ADA for "discrimination against people with Tarlov Cyst Disease."

---

[69] These include intentional infliction of emotional distress, tortious interference with contracts, and violation of the Kansas Consumer Protection Act. Am. Compl. at pp. 92–93.

[70] Am. Compl. at pp. 53, 64, 67.

The Court also finds that allowing Plaintiff another opportunity to amend his complaint would be futile and create undue prejudice for Defendant McCowen. This is so because Plaintiff's prior lawsuit against Dr. McCowen—based upon the same alleged conduct occurring in 2016[71]— has been dismissed as time barred under the statute of limitations and/or dismissed for failure to state a claim for relief and affirmed by the Tenth Circuit Court of Appeals.[72]

## VI.    State Law Claims

Plaintiff's remaining theories of recovery against Defendants are based upon Kansas state law. They include fraudulent transfer of assets, intentional infliction of emotional distress, tortious interference with contracts, breach of contract, fraudulent inducement, and violation of the Kansas Consumer Protection Act. To the extent these state law claims relate to the estate of Plaintiff's mother and/or probate matters, the Court should decline to exercise supplemental jurisdiction over them.

When the Court has original jurisdiction, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over state law claims. Supplemental jurisdiction "is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants."[73] But "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to

---

[71] *Compare* Amended Complaint allegations regarding Defendant McCowen with allegations in *Sullivan v. HCA Healthcare, Inc.*, No. 19-2034-JAR-TJJ, 2019 WL 4034473, at *6 (D. Kan. Aug. 27, 2019), *aff'd sub nom. Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43 (10th Cir. 2021) ("On January 19, 2016 Plaintiff sought medical care at Family Health and was evaluated by Dr. McCowen but Dr. McCowen said "I am not going to look at your back," and did not examine Plaintiff's back.").

[72] *See id.* (dismissing Plaintiff's claims against Dr. McCowen for disability discrimination and medical malpractice under the ADA, discriminatory business practices, RICO, obstruction of justice, and Section 1981 discriminatory animus).

[73] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997).

exercise jurisdiction over any remaining state claims."[74] Indeed, courts routinely decline to exercise supplemental jurisdiction over state-law claims when federal claims do not survive screening, as is the case here.

Accordingly, finding no federal claims survive screening, the undersigned Magistrate Judge recommends that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismiss them without prejudice.

## VII.    Further Amendment is Discouraged

The Court also finds that allowing Plaintiff another opportunity to amend his complaint to allege additional facts would be futile and create undue prejudice for Defendants. As many of the alleged events occurred nearly a decade ago, they would likely be barred by the applicable statute of limitations. Plaintiff has also previously filed a lawsuit against these same Defendants based upon similar or the same alleged conduct.[75] Plaintiff's prior lawsuit against these same defendants was dismissed for failure to state a claim for relief and affirmed by the Tenth Circuit Court of Appeals.[76] Plaintiff has already amended his complaint once so any further attempt to amend it would require a Court order granting leave to file it under Fed. R. Civ. P. 15(a)(2).

---

[74] *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004) (explaining that the district has discretion to decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it had original jurisdiction); *See also* 28 U.S.C. § 1367(c)(3) (stating that district courts may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction").

[75] *See Sullivan v. HCA Healthcare, Inc.*, No. 19-2034-JAR-TJJ, 2019 WL 4034473, at *2 (D. Kan. Aug. 27, 2019), *aff'd sub nom. Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43 (10th Cir. 2021).

[76] *See id.* (dismissing Plaintiff's federal RICO, obstruction of justice, and Section 1981 claims against the Family Defendants).

Although the Court is recommending dismissal of Plaintiff's federal claims for failure to state a claim, the Court is also required to dismiss an action under 28 U.S.C. § 1915(e)(2)(B)(i) if it determines the action is "frivolous or malicious."[77] "When a *pro se* litigant files complaints that are repetitive, duplicative of other filings, without merit, or frivolous, he abuses the district court process."[78] Repetitious litigation of virtually identical causes of action may be dismissed under 28 U.S.C. § 1915 as frivolous or malicious."[79] Although Plaintiff has asserted some new allegations against the Family Defendants, Plaintiff has repeatedly filed nearly identical causes of action concerning the same alleged conduct. All of the Defendants listed in his Amended Complaint have been previously sued by Plaintiff at least once.[80] Plaintiff's repeated filing of cases in federal court attempting to relitigate claims and issues in his prior dismissed cases comes perilously close to "malicious" so as to require dismissal of this action pursuant to Section 1915(e)(2)(B)(i), but the Court refrains from making that finding at this point.[81]

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge: (1) dismiss without prejudice Plaintiff's federal claims against all Defendants, as set forth in the Amended Complaint, under 28 U.S.C. § 1915(e)(2)(B)(ii) because they fail to state a claim upon which relief may be

---

[77] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

[78] *Childs v. Miller*, 713 F.3d 1262, 1265 (10th Cir. 2013) (citation omitted).

[79] *Id.*

[80] *See* D. Kan. Case Nos. 19-2034-JAR-TJJ and 22-cv-2045-KHV-TJJ.

[81] On a separate but related note, Plaintiff replaced his original 6-page Civil Complaint (with 48 Additional Pages attached) with his 99-page Amended Complaint. But his addition of pages is unavailing and conflicts with Fed. R. Civ. P. 8(a)(2), which requires a "short and plain" statement of claims showing Plaintiff is entitled to relief from the named Defendants. Plaintiff's Amended Complaint is anything but "short and plain."

granted; and (2) decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice.

Dated March 21, 2025, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge